**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

TREVOR A. MCCOY,        )
                        )
        Plaintiff,      )    **CIVIL ACTION**
                        )
v.                      )    No. 13-1131-MLB
                        )
JEFFREY SMITH,          )
                        )
        Defendant.      )
_____)

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion for summary judgment. (Doc. 9). The motion has been fully briefed and is ripe for decision. (Docs. 10, 15, 19). Defendant's motion is granted for the reasons herein.

**I.   Facts**

On May 31, 2010, Trevor J. McCoy was arrested for embezzling from his employer, Banana Republic. On March 4, 2011, Trevor J. was charged with the crime and a warrant for his arrest was issued. The warrant correctly listed the name Trevor J. McCoy, Trevor J.'s year of birth, driver's license number and the last four digits of his social security number. Despite the correct information in the warrant, an unknown individual inputted information identifying plaintiff, Trevor A, into an I/LEADS computer program. This information appeared on a warrant worksheet, a document utilized by sheriff's deputies and accessed through a computer system. The warrant worksheet listed information for plaintiff, including his age, date of birth and last known address.

Defendant Jeffrey Smith, a deputy with the Sedgwick County

Sheriff's office, is one of six deputies who search for suspects with outstanding arrest warrants on a day to day basis.  At the time the warrant was issued for Trevor J., Sedgwick County did not provide the arresting deputies, including defendant, with the actual arrest warrants issued by the court.[1]  Instead, defendant retrieved the warrant worksheets from the I/LEADS computer system and would then search for the suspects and arrest them.  On May 16, 2011, defendant logged onto his computer and retrieved the warrant worksheet for plaintiff.  Defendant did not review the actual warrant and was unable to access the warrant from his computer.

Defendant left the sheriff's office and went searching for plaintiff.  Defendant arrived at plaintiff's father's home and informed plaintiff's father of the outstanding warrant for his son.  Plaintiff's father had no knowledge of the criminal acts and insisted his son was studying in Oklahoma.  Plaintiff's father called plaintiff who denied the criminal activities and stated that he had never worked at Banana Republic.  Defendant suggested that plaintiff retain an attorney to take care of the warrant and left his business card with the criminal case number.  Defendant did not instruct plaintiff to travel to Wichita.  Defendant did not take any further action concerning plaintiff or Trevor J. McCoy.

On May 18, plaintiff drove to Sedgwick County Jail and turned himself in.  Plaintiff began the booking process at 8:15 p.m. and was released on a $5,000 bond at 9:58 p.m.  On June 22, the court entered

---

[1] The policy has since changed and deputies are provided with a copy of the arrest warrant to check the information against the warrant worksheet.

an order excusing plaintiff from any further obligation in Trevor J.'s criminal case.

Plaintiff brought this action alleging defendant violated his rights by arresting him without probable cause and causing him to be unlawfully detained. Defendant moves for summary judgment on the basis of qualified immunity.

**II.     Summary Judgment Standards**

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim. Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**III.    Analysis**

Pursuant to 42 U.S.C. section 1983, any person who "under color

of . . . [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 was enacted to provide protections to those persons wronged by the misuse of power. While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed. See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995). To state a claim for relief in a section 1983 action, plaintiff must establish that he was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law. See American Mfr's. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

**A. Fourth Amendment**

Plaintiff argues that defendant did not have probable cause to arrest him and, therefore, the arrest was unlawful. Defendant responds that he did not arrest plaintiff or, in the alternative, that mere negligence is not sufficient to overcome qualified immunity.

To succeed on his claim, plaintiff must allege personal involvement by the defendant officer. Fogarty v. Gallegos, 523 F.3d 1147, 1156 (10th Cir. 2008)("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") Defendant was not involved in plaintiff's arrest and detention at the jail. Moreover, defendant did not tell plaintiff that he needed to turn himself in and was not the individual who inputted the incorrect information into the I/LEADS system.

Nevertheless, the court finds that defendant had probable case

to arrest plaintiff and, therefore, no constitutional violation occurred. "Probable cause is based on the totality of the circumstances, and requires reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime." Beattie v. Smith, ---F.3d.---, 2013 WL 5995621, 4 (10th Cir. Nov. 13, 2013); Beck v. Ohio, 379 U.S. 89, 91 (1964). A mistaken premise can furnish grounds for an arrest based on mistaken information, "if the officers do not know that it is mistaken and are reasonable in acting upon it." See United States v. Shareef, 100 F.3d 1491, 1505 (10th Cir. 1996).

Moreover, the Tenth Circuit and the Supreme Court have held that officers can rely on information provided to them by a dispatcher and NCIC hits. See United States v. Hensley, 469 U.S. 221, 231, 105 S. Ct. 675, 83 L. Ed.2d 604 (1985) (holding that police officers are entitled to rely on the reasonable information relayed to them from a police bulletin); See United States v. Shareef, 100 F.3d 1491, 1505-06 (10th Cir. 1996) (upholding as reasonable officer's reliance on dispatcher's mistaken report of a NCIC match, rejecting argument officer should have conducted further investigation prior to investigative stop); see also United States v. Hines, 564 F.2d 925, 927 (10th Cir. 1977) (noting that information from NCIC computer bank "has been routinely accepted in establishing probable cause for a valid arrest").

While the Tenth Circuit has addressed mistakes concerning the NCIC system, the Circuit has not yet addressed a mistaken arrest as a result of an error in the I/LEADS system. The court has located one district court opinion on this issue. In Howard v. Regional Transit

Authority, 667 F. Supp. 540, 546 (N.D. Ohio 1987), the Northern District of Ohio held that if a "law enforcement officer acts reasonably and consistent with the information obtained from the computer system [I/LEADS], then a person who is mistakenly arrested because of such information cannot maintain a cause of action under § 1983." Based on the Circuit's position on the NCIC system, the court believes that the Tenth Circuit would hold that officers could rely on information received from the I/LEADS system.

In this case, defendant had no reason to suspect that the information obtained from I/LEADS was incorrect and the warrant officers' standard routine was to utilize the warrant worksheet from the I/LEADS system when searching for suspects. An officer acts reasonably in relying on existing procedures and "should not be held responsible for the failure of county personnel to clear . . . the records." Hill v. Bogans, 735 F.2d 391, 392-93 (10th Cir. 1984). Therefore, the undisputed facts, viewed in the light most favorable to plaintiff, establish that defendant had probable cause to make the arrest. Moreover, a reasonable officer in defendant's position would believe that plaintiff had an outstanding warrant for his arrest. See Hill v. California, 401 U.S. at 802.

Plaintiff additionally contends that defendant should have checked the warrant language and not relied exclusively on the warrant worksheet. Plaintiff, however, cites no authority that officers are required to check an arrest warrant after receiving trustworthy information that there is an outstanding warrant for an individual's arrest. Neither federal nor state law require that an arresting officer be in possession of the arrest warrant at the time of arrest.

Fed. R. Crim. R. 4; K.S.A. 22–2305.  Even if there was an internal policy to double check the warrant against the computer system, this failure constitutes negligence only.  Under section 1983, plaintiff must prove that police intentionally deprived him of a constitutional right.  Paul v. Davis, 424 U.S. 693, 1159-60 (1976); Martinez v. Uphoff, 265 F.3d 1130, 1133-34 (10th Cir. 2001). "Neither simple nor gross negligence implies an intentional and deliberative violation of constitutional rights, and consequently neither form of negligence satisfies the scienter requirement of § 1983." Johnson v. Martin, 195 F.3d 1208, 1219 (10th Cir. 1999).

### B. Unlawful Detention

Because probable cause existed to arrest plaintiff, his claim of unlawful detention must also fail.  Scull v. New Mexico, 236 F.3d 588, 599 (10th Cir. 2000)(defendants believed they had the lawful authority to imprison plaintiff based on the NCIC hit).  Moreover, the claim could not proceed against defendant because he did not have any personal participation in plaintiff's detention.  Fogarty, 523 F.3d at 1156 (10th Cir. 2008).

### C. Motion to Amend

In his response, plaintiff seeks to amend to add Sedgwick County as a defendant.  Defendant objects for several reasons.  Because plaintiff has not properly moved to amend as required by D. Kan. R. 15.1, the motion is denied.  Plaintiff may file a proper motion to amend by January 10, 2014, and the court will consider the motion after it has been fully briefed.

## III. Conclusion

Defendant's motion for summary judgment is granted.  (Doc. 9).

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this ___17th___ day of December 2013, at Wichita, Kansas.

<pre>
                                   s/ Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE
</pre>